**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **WANDALIZ A.[1]**, | : | |
| *Plaintiff*, | : | **CIVIL ACTION** |
| **v.** | : | **No. 25-894** |
| | : | |
| **FRANK BISIGNANO,** | : | |
| **Commissioner of Social Security,** | : | |
| *Defendant.* | : | |

**MEMORANDUM OPINION**

**HON. JOSÉ RAÚL ARTEAGA**                                           **July 10, 2026**
**United States Magistrate Judge[2]**

The Commissioner of the Social Security Administration ("SSA"), through an

Administrative Law Judge ("ALJ"), determined that Wandaliz A. was not disabled and

denied her applications for a period of disability and Disability Insurance Benefits

("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-433 and for

Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C.

---

[1] Wandaliz A. is referred to solely by her first name and last initials in accordance with this Court's standing order. *See* Standing Order, *In re: Party Identification in Social Security Cases* (E.D. Pa. June 10, 2024), https://www.paed.uscourts.gov/sites/paed/files/documents/locrules/standord/SO_pty-id-ss.pdf (last visited June 24, 2026).

[2] The parties have consented to the jurisdiction of a United States Magistrate Judge to conduct all proceedings, including the entry of a final judgment, pursuant to 28 U.S.C. § 636(c). (*See* ECF 7.) This matter was originally assigned to United States Magistrate Judge Elizabeth T. Hey (ECF 4) and, following her retirement, was reassigned to me on April 21, 2026. (ECF 10.)

§§ 1381-1383. Wandaliz A. seeks judicial review of the ALJ's final decision pursuant to 42 U.S.C. § 405(g), arguing the ALJ erred in his determination that she was not disabled. (*See* ECF 10.) She asks the court to reverse and remand the Appeals Council's decision. (*Id.* at 25.) The Commissioner responds that substantial evidence supports the ALJ's decision that Wandaliz A. is not entitled to DIB or SSI. (*See* ECF 11.) After careful review of the entire record, Wandaliz A.'s request for review is **DENIED**, and the Commissioner's decision is **AFFIRMED**.

## I.      BACKGROUND

Wandaliz A. applied for DIB and SSI on February 28, 2020, alleging a disability beginning on February 4, 2020, due to a motor vehicle accident. (*See* Tr. 303.) She had past relevant work as a housekeeping cleaner and a warehouse worker. (Tr. 329-31.) Born in June 1988, Wandaliz A. was 31 years old on her alleged disability onset date: a "younger person" not limited in her ability to adjust to other work. (Tr. 303.) *See* 20 C.F.R. §§ 404.1563(c), 416.963(c). She claimed disability due to injuries sustained during the motor vehicle accident, including a right clavicle fracture and left patella fracture, the latter requiring surgical repair. (Tr. 442-43.)

### A.      Wandaliz A.'s Initial Administrative Proceedings.

Wandaliz A.'s benefits application was denied initially and on reconsideration. (Tr. 92-93, 150-51). She requested a hearing, which ALJ Howard Kauffman held over telephone in March 2021, (Tr. 59-91), with a supplemental telephone hearing that November. (Tr. 41-58.) Counsel represented Wandaliz A. at both hearings and an

interpreter was present. (Tr. 41, 59.) The ALJ heard testimony from Wandaliz A. and a vocational expert ("VE") both times. (Tr. 45-58, 62-90.)

The ALJ issued a decision in December 2021, finding that Wandaliz A. had several severe impairments: "status post closed displaced comminuted fracture of left patella with subsequent patellectomy, status post bilateral knee lacerations, osteoarthritis of the right knee, and status post closed displaced fracture of the right clavicle with ORIF." (Tr. 18.) She also had other medically determinable impairments that were not severe, including a traumatic brain injury and headache disorder, obesity, degenerative disc disease, deep vein thrombosis, and "depression and anxiety, considered singly and in combination." (Tr. 18-19.) The ALJ considered all of Wandaliz A.'s medically determinable impairments when determining her Residual Functional Capacity ("RFC").[3] (*Id.*) He then found that Wandaliz A.'s impairments did not meet or medically equal a listed impairment. (Tr. 21.)

After "careful consideration of the entire record," the ALJ determined that Wandaliz A. had the RFC

> to perform sedentary work . . . except she can occasionally climb ramps and stairs, and can occasionally crawl, balance and stoop and cannot kneel or crouch. She cannot climb ladders, ropes, or scaffolds. She can never be exposed to unprotected heights or moving machinery. She cannot reach overhead or in other directions with her right upper extremity. She can frequently handle, finger, feel, push, and pull with the right upper

---

[3] "Residual functional capacity" is the most a claimant can do in a work setting despite the physical and mental limitations of his or her impairment(s) and any related symptoms (*e.g.*, pain). 20 C.F.R. § 404.1545(a)(1). In assessing a claimant's RFC, the Commissioner considers all medically determinable impairments, including those that are not severe. *Id.* § 404,1545(a)(2).

extremity. She can engage in simple, repetitive and routine tasks with no work at a production rate pace.

(Tr. 22.)

Among the medical opinions and prior administrative medical findings that the ALJ considered, he found that Dr. Kneifati's opinion was mostly persuasive, "well supported by an extensive physical examination," and "consistent with clinical findings" and Wandaliz A.'s "robust activities of daily living." (Tr. 26.) However, the ALJ did not include Dr. Kneifati's opined lifting, standing, walking, sitting, reaching, and balancing limitations in Wandaliz A.'s RFC. (Tr. 22, 26.)

Responding to the ALJ's hypotheticals in March 2021, VE Dr. Paul Anderson opined that a hypothetical individual with Wandaliz A.'s RFC could not perform her past relevant work but could still perform other jobs in the national economy, including nut sorter (food industry), final assembler, and stuffer (textile industry). (Tr. 85-89.) Wandaliz A.'s attorney asked no questions about whether her English language proficiency would impact her ability to perform the identified jobs. (Tr. 88-89.)

In response to the ALJ's November 2021 hypotheticals, VE Carmine Abraham similarly opined that a hypothetical individual with Wandaliz A.'s RFC could not perform her past relevant work but could perform other jobs in the national economy such as system monitor (35,390 jobs nationally), credit checker[4] (24,600 jobs nationally),

---

[4] The VE testified that the Dictionary of Occupational Titles ("DOT") code "for [the credit checker] position would be #237.367-014." (Tr. 50.) The job listed under that DOT code is "Call Out Operator." *See* Call-Out Operator, Dictionary of Occupational Titles, Code 237.367-014, 1991 WL 672186 (4th ed. 1991) ("[A Call-Out Operator c]ompiles credit information, such as status of credit accounts, personal references, and bank accounts to fulfill subscribers' requests, using telephone. Copies information onto form to update

and dowel inspector (19,250 jobs nationally). (Tr. 48-51.) Wandaliz A.'s attorney asked the VE a few questions, including whether someone who could not read or speak English could perform the jobs of system monitor or credit checker, questions to which Ms. Abraham responded "no" as based on her thirty years of experience. (Tr. 53-55.)

The VE also explained that credit checker jobs were, "in some cases," bilingual. (Tr. 54.) In those cases, the person "would have to be . . . able to speak both Spanish and English." (Tr. 55.) The ALJ then asked Wandaliz A.'s attorney whether, "the English issue" was relevant considering amendments to the Social Security regulations "that deleted the requirement for Spanish speaking." (Tr. 56.) Her counsel answered that the language issue would be relevant to the extent that it would permit Wandaliz A. to raise an argument that the VE had only identified one job—*i.e.*, dowel inspector—that would not require speaking English which, in some cases, would "not be sufficient to find the claimant capable of working," but conceded that the question was "up to [the ALJ]" to decide. (*Id.*) Wandaliz A.'s attorney subsequently told the ALJ that he was "*not* making

---

information for credit record on file, or for computer input. Telephones subscriber to relay requested information or submits data obtained for typewritten report to subscriber."). Nevertheless, when referring to this DOT code, VEs sometimes use the terms Credit Checker and Call-Out Operator interchangeably. This is likely because the Occupational Information Network ("O*NET") once identified a similar job as "Credit Checker." *See July V. M. v. Kijakazi*, No. 21-4141, 2021 WL 5905940, at *5 (D.N.J. Dec. 8, 2021) (explaining that "the more modern Department of Labor O*NET index 'crosswalks' the occupation of call-out operator, merging it into that of "53117 Credit Checkers"); *Feeley v. Comm'r of Soc. Sec*, No. 14-4970, 2015 WL 3505512, at *12 (D.N.J. June 3, 2015) (describing the O*NET Credit Checker job responsibilities as "Investigate history and credit standing of individuals or business establishments applying for credit. Telephone or write to credit departments of business and service establishments to obtain information about applicant's credit standing.").

the Spanish language argument" and that his client was "much too young for that even under the old rule." (Tr. 57 (emphasis added).)

In December 2021, the ALJ determined that Wandaliz A. was "unable to perform any past relevant work." (Tr. 26.) Nevertheless, because there were jobs "that exist[ed] in significant numbers in the national economy that [she] could perform," she was not disabled. (Tr. 27-29.) The ALJ credited the VE's November 2021 testimony and concluded that a person of Wandaliz A.'s age, education, work experience, and RFC could perform the jobs identified. (Tr. 28.) Despite the VE's testimony that the system monitor and credit checker jobs required an ability to communicate in English, the ALJ noted that "the RFC is based entirely on medically determined impairments and does not include language limitations." (*Id.*)

Wandaliz A. submitted a request for review of the ALJ's 2021 decision, (Tr. 297-99), which the Appeals Council denied. (Tr. 1-3.) Following the denial, she sought judicial review of the Commissioner's final decision in this Court. *See Wandaliz A. v. Kijakazi*, Civ. A. No. 22-5304 (E.D. Pa.). The Commissioner filed a voluntary motion to remand in March 2023, (Tr. 2472-74), which my former colleague United States Magistrate Judge Elizabeth T. Hey granted. (Tr. 2477-78.)

### B.    The Administrative Determination Giving Rise to this Appeal.

On remand, the Appeals Council vacated the ALJ's 2021 final decision and instructed the ALJ to further consider Dr. Kneifati's opinion and Wandaliz A.'s RFC, further evaluate her alleged symptoms, further consider her RFC "during the entire period at issue" in light of Dr. Kneifati's opinion, and, "*[i]f warranted by the expanded*

6

*record*," to collect VE testimony "to clarify the effect of the assessed limitations on the claimant's occupational base." (Tr. 2483-85 (emphasis added).)

The ALJ held a third telephone hearing in September 2024. (Tr. 2433-45.) Wandaliz A. had counsel and an interpreter was present. (Tr. 2434.) The ALJ heard Wandaliz A.'s testimony but did not ask to hear additional testimony from a VE even though one was present. (Tr. 2439-45.)

Following the third hearing, the ALJ issued a new decision in October 2024 and concluded that Wandaliz A. had several severe impairments: "degenerative joint disease of the bilateral knees; degenerative joint disease of the right shoulder; and major depressive disorder." (Tr. 2414.) He also determined that she had other medically determinable impairments that were not severe including anxiety, obesity, and degenerative disc disease of the lumbar spine. (Tr. 2414-15.) The ALJ considered all of Wandaliz A.'s medically determinable impairments when determining her RFC. (Tr. 2415.) The ALJ then found that Wandaliz A.'s impairments did not meet or medically equal a listed impairment. (*Id.*)

After "careful consideration of the entire record," this time the ALJ determined that Wandaliz A. had the RFC

> to perform sedentary work . . . except she can sit for 6 hours and stand or walk for 2 hours each in an 8-hour workday. [She] can occasionally climb ramps and stairs. She can occasionally balance and stoop. She cannot kneel or crouch. [Wandaliz A.] can occasionally crawl. She cannot climb ladders, ropes or scaffolds. [She] should never be exposed to unprotected heights or moving machinery parts. She is limited to simple, repetitive, and routine tasks. [She] cannot work at a production rate pace. She should never reach overhead or in other directions with her dominant right upper extremity.

[She] is limited to frequent handling and fingering and pushing/pulling with her dominant right upper extremity.

(Tr. 2417.) The ALJ also found that "[d]espite [Wandaliz A.'s] degenerative joint disease of the bilateral knees, [her] need for the use of a cane is not supported by the medical evidence of the record." (Tr. 2419.)

The ALJ determined that Wandaliz A. had "at least a high school education"[5] but that her past relevant work had been "unskilled." (Tr. 2424.) He again determined that Wandaliz A. was "unable to perform any past relevant work." (Tr. 2423.) Because there were other jobs "that exist[ed] in significant numbers in the national economy that [she] could perform," she was not disabled. (Tr. 2424-25.) The ALJ credited the VE's November 2021 testimony and concluded that a person of Wandaliz A.'s age, education, work experience, and RFC could perform the jobs of credit checker and dowel inspector. (Tr. 2424.)

Wandaliz A. now seeks judicial review of the Commissioner's final decision from October 2024. (ECF 1.) The parties agree that she exhausted her administrative remedies before filing this appeal. (*See* ECF 10 at 2; ECF 11 at 3.)

---

[5] "High school education and above means abilities in reasoning, arithmetic, and language skills acquired through formal schooling at a 12th grade level or above. We generally consider that someone with these educational abilities can do semi-skilled through skilled work." 20 C.F.R. §§ 404.1564, 416.964.

## II.    LEGAL STANDARDS[6]

The limited question before the Court is not whether Wandaliz A. was disabled. Rather, the Court must determine if substantial evidence supports the Commissioner's October 2024 finding that she was *not* disabled and whether the Commissioner, through the ALJ, correctly applied the relevant law. 42 U.S.C. § 405(g). Courts review the Commissioner's factual findings to see if "substantial evidence" exists to support them by looking at the existing administrative record. *Biestek v. Berryhill*, 587 U.S. 97, 102 (2019); *see also* 42 U.S.C § 405(g). "[T]he threshold for such evidentiary sufficiency is not high." *Biestek*, 587 U.S. at 103. Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation modified). It is "more than a mere scintilla but may be somewhat less than a preponderance of the evidence." *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005). The Court must affirm the Commissioner's disability determination if it is supported by substantial evidence. *Zirnsak v. Colvin*, 777 F.3d 607, 610 (3d Cir. 2014).

To determine whether a claimant is disabled under the Social Security Act, the Commissioner, through an ALJ, follows a five-step sequential evaluation process.

---

[6] The regulations governing claims for DIB, which can be found at 20 C.F.R. Part 404 and governing claims for SSI, which can be found at 20 C.F.R. Part 416 "are, as relevant here, not materially different." *Sims v. Apfel*, 530 U.S. 103, 107 n.1 (2000). Because the test for determining whether a person is disabled "is the same" for either class of benefits, the Court may consider case law developed under either provision in reaching a decision. *See Burns v. Barnhart*, 312 F.3d 113, 119 n.1 (3d Cir. 2002).

20 C.F.R. § 404.1520(a)(4)(i)-(v). The ALJ considers whether the claimant: (1) is engaged in substantial gainful activity; (2) has a severe impairment; (3) has impairment(s) that meet or medically equal a listed impairment; (4) has the capacity to do past relevant work, considering her RFC; and (5) is able to do any other work, considering her RFC, age, education, and work experience. *Id.* It is the claimant's burden to establish steps one through four. *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010). At step five, "the burden of production shifts to the Commissioner, who must . . . show there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and [RFC]." *Fargnoli v. Massanari*, 247 F.3d 34, 39 (3d Cir. 2001).

The Social Security Act requires an ALJ to state the "reason or reasons upon which [a denial of benefits] is based." 42 U.S.C. § 405(b)(1). The ALJ's opinion need only include "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 120 (3d Cir. 2000)). The Court may read the ALJ's decision "as a whole" to determine whether the record was sufficiently developed. *Id.* at 505. An ALJ "may consider many factors" when determining the reason or reasons for their decision, "yet base a decision on just one or two" factors. *Zaborowski v. Comm'r of Soc. Sec.*, 115 F.4th 637, 639 (3d Cir. 2024). "The statute requires [ALJs] to explain only the dispositive reasons for their decisions, not everything else that they considered." *Id.*

The Court defers to the ALJ's assessment of the evidence so long as the ALJ "specifically identif[ies] and explain[s] what evidence he [or she] found not credible and

why." *Zirnsak*, 777 F.3d at 612. ALJs must articulate how they considered medical opinions and "how persuasive" they are. 20 C.F.R. §§ 404.1520c(a) and (b)(1). An ALJ is not required to discuss "every tidbit of evidence" when making their determination. *Hur v. Barnhart*, 94 F. App'x 130, 133 (3d Cir. 2004); *see Fargnoli*, 247 F.3d at 41-42 ("[W]e do not expect the ALJ to make reference to every relevant treatment note in a case where the claimant . . . has voluminous medical records.").

Where substantial evidence supports the Commissioner's findings, courts may not "re-weigh the evidence or impose their own factual determinations." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011); *see also Zirnsak*, 777 F.3d at 611 (stating that a court may "not substitute [its] own judgment for that of the fact finder"). Courts owe deference to the ALJ's assessment of the evidence if the decision "explain[s] what evidence [the ALJ] found not credible and why." *Zirnsak*, 777 F.3d at 612. "The presence of evidence in the record that supports a contrary conclusion does not undermine the [ALJ's] decision so long as the record provides substantial support for that decision." *Malloy v. Comm'r of Soc. Sec.*, 306 F. App'x 761, 764 (3d Cir. 2009); *see also Brown v. Astrue*, 649 F.3d 193, 196 (3d Cir. 2011) (holding that an "ALJ is entitled to weigh all evidence in making [their] finding," even where there is record evidence "suggesting a contrary conclusion"). "[A] reviewing court must uphold even a decision of less than ideal clarity if the agency's path may reasonably be discerned." *Garland v. Ming Dai*, 593 U.S. 357, 369 (2021) (citation modified).

Following review of the entire record on appeal from a denial of benefits, the Court can enter "a judgment affirming, modifying, or reversing" the Commissioner's decision

"with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Wandaliz A. bears the burden to explain how any "error to which [s]he points could have made any difference" in the ALJ's determination. *Shinseki v. Sanders*, 556 U.S. 396, 409-413 (2009). Remand is not required if it would not affect the outcome of the case. *Rutherford*, 399 F.3d at 553.

## III.   DISCUSSION

Wandaliz A. contends that the Commissioner's determination should be reversed and remanded because the ALJ erred in deciding that she could perform the job of credit checker. (ECF 10 at 4.) She maintains that the ALJ ignored the VE's November 2021 testimony that her inability to read or speak English meant she could not be a credit checker and also failed to resolve a reasoning level conflict between the VE's testimony and the Dictionary of Occupational Titles ("DOT") with respect to the credit checker job.[7] (*Id.*) She also contends remand is required because the ALJ made no finding that the alternative occupation of dowel inspector met the threshold for a significant number of jobs in the national economy. (*Id.*) In addition, she complains that the ALJ failed to

---

[7] Wandaliz A. also argues that the ALJ could not rely upon Emergency Message 21065 ("EM-21065") to completely prohibit any consideration of certain parts of the DOT such as reasoning level. (ECF 10 at 4.) Because the ALJ did not rely on EM-21065 in making its determination and the Commissioner does not rely on it in its response, (ECF 11 at 10.), there is no need to address this argument. *See. e.g., James W. v. Comm'r of Soc. Sec.*, No. 25-1107, 2026 WL 622694, at *4 (D.N.J. Mar. 5, 2026) (declining to rule on the Plaintiff's EM-21065 argument where "the ALJ did not invoke EM-21065" because "federal courts do not render advisory opinions").

adequately consider the impact of her cane usage on her ability to perform the identified occupations. (*Id.*)

The Commissioner responds that the ALJ did not err by failing to consider Wandaliz A.'s English proficiency or to resolve any apparent reasoning level conflict between her RFC and the DOT and properly considered her use of a cane to ambulate. (*See* ECF 11 at 5-13.)

Substantial evidence supports the ALJ's decision. He reviewed the record, took relevant evidence into consideration, and adequately articulated his decision. Remand is not required as is further explained below.

### A.    The ALJ Properly Decided that Wandaliz A. Could Perform the Job of Credit Checker.

A review of the record demonstrates that the ALJ properly decided that Wandaliz A. could perform the job of credit checker.

#### 1.    The ALJ Properly Weighed the VE's Testimony Regarding Wandaliz A.'s English Proficiency.

Wandaliz A. argues that remand is required because the ALJ did not properly consider the VE's November 2021 testimony that a credit checker job would not be available to someone who was unable to read or speak English. (*See* ECF 10 at 4-9; ECF 12 at 1-2.) The Commissioner responds that the ALJ did not need to address the VE's testimony about Wandaliz A.'s English proficiency under the applicable SSA regulations when deciding that there were a significant number of jobs available to her in the national economy. (ECF 11 at 5-7.)

To support its argument, the Commissioner points to two SSA actions addressing how an ALJ should weigh language proficiency concerns during disability and educational category determinations. (ECF 11 at 5.) Both predate the Commissioner's consideration of Wandaliz A.'s benefits application. First, Social Security Ruling ("SSR") 20-01p, issued in 2020, explains that "[w]hen determining the appropriate education category, [the SSA] will not consider whether an individual attained his or her education in another country or whether the individual lacks English language proficiency." 85 Fed. Reg. 13692-02, 2020 WL 1285114, at *3 (S.S.A. Mar. 9, 2020). Second, effective April 27, 2020, the SSA amended the governing regulations "to eliminate the education category inability to communicate in English," explaining that it was "no longer a useful indicator . . . because of changes in the national workforce." *Removing Inability to Communicate in English as an Education Category*, 85 FR 10586, 2020 WL 885690 (S.S.A. Feb. 25, 2020). So, effective April 27, 2020, the SSA "no longer consider[s] whether an individual is able to communicate in English at the fifth and final step of the sequential evaluation process (step 5)."[8] *Id.* at *10587. As a result, the Commissioner argues that remand is not required based on this argument because the ALJ was not required to consider Wandaliz A.'s English proficiency when he made his step five determination. (ECF 11 at 5-6.)

---

[8] Before adopting the amended regulation, SSA rejected an objection to the amendment which asserted that the ability to communicate in English must be a relevant factor for the ALJ's consideration because the DOT job descriptions include a language component. *See* 85 Fed. Reg. 10586-01, 10591.

Wandaliz A. argues that even though the currently applicable regulations have removed the inability to communicate in English as an educational category, the ALJ was still required "to consider the entirety of the [VE's] testimony." (ECF 12 at 1.) Specifically, she faults the ALJ for failing to acknowledge that, in response to her attorney's question in November 2021, the VE explained that she was not "aware of" any available credit checker positions for people who could not read English.[9] (Tr. 54.) Wandaliz A. and the Commissioner both acknowledge that the ALJ's October 2024 decision does not specifically address this portion of the VE's 2021 testimony.[10] (*See* ECF 10 at 4; ECF 11 at 5.)

In his 2024 decision, the ALJ explained that he had asked the VE about the extent to which Wandaliz A.'s "additional limitations" would "erode the unskilled sedentary occupational base" to determine whether jobs exist in the national economy for an individual with Wandaliz A.'s education, work experience and RFC. (Tr. 2424.) Then,

---

[9] For purposes of this decision, the Court assumes, without deciding, that Wandaliz A. did not, during her administrative proceedings, waive the Spanish language argument that she raises here on appeal despite her attorney's statement to the ALJ that he was not making such an argument in the administrative proceeding. (*See* Tr. 57.)

[10] The ALJ's vacated December 2021 decision made explicit reference to this portion of the VE's testimony and still accepted the credit checker job as one that Wandaliz A. could perform because "the RFC is based entirely on medically determined impairments and *does not include language limitations*." (*See* Tr. 28 (emphasis added).) Implicit in the ALJ's prior reasoning are the rationale for SSR 20-01p and the SSA's removal of the inability to communicate in English as an education category from its regulation. While the October 2024 decision does not repeat or explicitly refer to the ALJ's previously given reasons for not crediting this portion of the VE's testimony, it again concludes that "the [VE's] testimony [was] consistent with the information contained in the [DOT]." (Tr. 2424.)

based on the VE's 2021 testimony, the ALJ determined that "given all of these factors," an individual like Wandaliz A.—*i.e.*, someone with at least a high school education, her RFC, and her past unskilled work—would be able to perform the tasks required for a credit checker and dowel inspector, jobs which were available in sufficiently significant numbers to warrant a finding that she was not disabled. (Tr. 2424-25.)

In arguing that the ALJ failed to properly consider the VE's testimony that the credit checker job would not be available to someone who cannot speak English, Wandaliz A. cites no "authority requiring an ALJ to include English proficiency limitations in an RFC or hypothetical to the VE under the current regulation." *Adrian M. L. v. O'Malley*, No. 22-5972, 2024 WL 665938, at *3 (N.D. Ill. Feb. 16, 2024). Instead, she argues only that "the ALJ was not permitted to ignore the portions of the VE's testimony that were inconvenient." (ECF 12 at 2.)

Neither the Third Circuit nor a court in this district have directly addressed the issue of whether, after April 2020, an ALJ must consider a claimant's English proficiency in determining whether the claimant can make a successful adjustment to other work. Nevertheless, following the regulatory change, several other district courts considering similar arguments have declined to grant remand based on the contention that an ALJ failed to adequately consider the plaintiff's language limitations. *See, e.g.*, *Waledahmad A. v. Comm'r of Soc. Sec.*, No. 22-398, 2024 WL 3722697, at *12 (W.D.N.Y. Aug. 8, 2024) (holding that "the inability to speak English is no longer relevant at step five"); *Adrian M. L. v. O'Malley*, No. 22-5972, 2024 WL 665938, at *3 (N.D. Ill. Feb. 16, 2024) (holding that under the amended regulations there was "no reversible error in the ALJ's failure to rely

16

on the VE's testimony that work did not exist for an individual who is primarily a Spanish speaker"); *Glorivy E.C. v. Comm'r of Soc. Sec.*, No. 24-1919, 2024 WL 5202026, at *9 (S.D.N.Y. Dec. 23, 2024) (finding the ALJ's failure to ask the VE to address the plaintiff's inability to speak English was not a reason for remand in light of the 2020 regulatory amendment); *Hue Y. v. O'Malley*, No. 23-209, 2023 WL 9289112, at *6 (D. Minn. Dec. 29, 2023) (explaining that the SSA had "explicitly rejected" the plaintiff's argument that the ability to communicate must be a relevant factor because the DOT job descriptions have a language component), report and recommendation adopted in part, rejected in part on other grounds, No. 23-209, 2024 WL 185250 (D. Minn. Jan. 17, 2024); *R.M. v. Kijakazi*, No. 22-2969, 2023 WL 6164296, at *6 (D. Minn. Aug. 25, 2023) ("Because a lack of English language proficiency is no longer a factor that the SSA must consider when determining a claimant's disability eligibility, [the p]laintiff's argument that the RFC was incomplete because it failed to include such a limitation or because the ALJ failed to consider the same with respect to step 5, including any consideration of the DOT, is without merit."), report and recommendation adopted sub nom. *Raad M. v. Kijakazi*, No 22-2969, 2023 WL 6163957 (D. Minn. Sept 21, 2023); *Vang v. Comm'r of Soc. Sec.*, No. 21-488, 2022 WL 17812859, at *6 (E.D. Cal. Dec. 19, 2022) (declining to grant remand based on the ALJ's finding that the plaintiff had a limited education because even if the plaintiff was "deemed illiterate," she had not cited any authority requiring an ALJ to address English proficiency limitations in an RFC assessment or a VE hypothetical under the current regulatory scheme"). *Cf. Olga S. v. Comm'r of Soc. Sec.*, No 25-1443, 2026 WL 555458, at *11 (D.N.J. Feb. 27, 2026) (declining to find that "the ALJ was required to consider, in some

way, the language and cultural barriers" the plaintiff alleged where there was "ample documentation in the record confirming her English language proficiency").

Since the regulatory amendment, only one district court decision in this Circuit has taken a different approach. In *Grullon v. O'Malley* the court "agree[d] that the regulatory change significantly alters the analysis of English literacy under the [SSA's] rules . . . ." No. 23-745, 2024 WL 4643518, at *8 (M.D. Pa. Oct. 31, 2024). However, the Court explained that it did "not believe that these revised regulations, standing alone, wholly foreclose consideration of language barriers to employment." *Id.* Ultimately, the court granted remand, finding that the ALJ's failure to address inconsistencies between the VE's testimony which discounted the plaintiff's language barriers and the job requirements identified in the DOT resulted "in a decision which [could not] be sustained when viewed pragmatically in light of economic realities." *Id.* at *1. To support its conclusion, the court relied on a case where the ALJ made her determination before the amended regulation went into effect. *Grullon*, 2024 WL 4643518, at *6 (citing *Marisol M. v. Comm'r Soc. Sec.*, No. 20-8993, 2022 WL 2357413, at *6 (D.N.J. June 29, 2022)). Specifically, *Marisol M.* held that it was *not harmless* for the ALJ to fail to include the claimant's English illiteracy in the hypothetical question posed to the VE where the *prior regulation applied* at the time when the ALJ issued her decision. 2022 WL 2357413, at *6. *Grullon* acknowledged that the timing of the ALJ's decision in *Marisol M.* was distinguishable but nevertheless did not construe the amended regulation as amending or repealing the DOT "in a way which would lead to unexplained, irrational inconsistencies." *Id.* at *6 n.3. *Grullon* cites no other authority to support the proposition that, on appeal, this Court should view the

18

ALJ's decision pragmatically in light of economic realities. The decision is not binding, and its reasoning does not persuade.

SSI and DIB are available to individuals who are disabled "by reason of any medically determinable physical or mental impairment." 42 U.S.C. §§ 423, 1382c. Wandaliz A. points to no authority holding that her lack of English proficiency is *per se* proof of either a physical or mental impairment. Consistent with that understanding, the DOT does not explicitly require *English* language skills for either the credit checker or dowel inspector positions. *See* Call-Out Operator, Dictionary of Occupational Titles, Code 237.367-014, 1991 WL 672186 (4th ed. 1991); Dowel Inspector, Dictionary of Occupational Titles, Code 669.687-014, 1991 WL 686074 (4th ed. 1991). As one court has explained, "[w]here the DOT does not specify that the language requirements of the jobs identified by the vocational expert must be met in English, and revised agency regulations provide that an inability to communicate in English is no longer considered, there was no conflict between vocational expert's testimony and the DOT for the ALJ to resolve." *Maha A. v. Kijakazi*, No. 23-11 2023 WL 12096934, at *4 (D. Utah Dec. 5, 2023); *see also Waledahmad A. v. Comm'r of Soc. Sec.*, No. 22-398, 2024 WL 3722697, at *12 (W.D.N.Y. Aug. 8, 2024) (holding there was "no apparent conflict between the VE's testimony" that the plaintiff could perform jobs requiring Level 1 language skills "and the DOT because the inability to speak English is no longer relevant at step five").

Even if the ALJ did err by declining to address whether Wandaliz A.'s English language proficiency presented a conflict with the credit checker job—and an abundance of case law suggests that he did not—Wandaliz A. has not shown that any such error

19

would make a difference to the outcome of this case such that remand would be required. *See Rutherford*, 399 F.3d at 553. The Commissioner meets his burden at step five if there are a significant number of jobs "in *one* or more occupations" that an individual can perform. 20 C.F.R. §§ 404.1566(b), 416.966(b) (emphasis added). The VE's testimony that there are 19,250 dowel inspector jobs available in the national economy is enough to support the ALJ's finding at step five. *See Sanchez v. Comm'r Soc. Sec.*, 705 F. App'x 95, 99 (3d Cir. 2017) ("[P]recedent suggests that [testimony estimating 18,000 available jobs] is sufficiently 'significant' to support the ALJ's decision."); *see also Young v. Astrue*, 519 F. App'x 769, 772 (3d Cir. 2013) (declining to define a "precise estimate" for what constitutes a "significant number" of jobs in the national economy). Wandaliz A. points to no binding precedent which would show otherwise. (*See* ECF 10 at 7-9.)

Remand is not required for further consideration based on this argument.

**2.    Remand is Not Required Based on a Conflict Between Wandaliz A.'s RFC for Simple Tasks and the Credit Checker Job with a <u>Reasoning Level of 3</u>.**

Wandaliz A. also argues that the ALJ failed to comply with SSR 00-4p, 2000 SSR LEXIS 8, which provides that "[o]ccupational evidence provided by a VE . . . generally should be consistent with the occupational information supplied by the [DOT]." 2000 SSR LEXIS 8 at *4 (S.S.A. Dec. 4, 2000). (*See* ECF 10 at 9-14.) She contends that the ALJ failed to appropriately resolve a reasoning level conflict between the VE's testimony, and the information contained in the DOT with respect to the job of credit checker. (*Id.*) Specifically, she argues that the credit checker job has a reasoning level of three and "requires at least the ability to carry out detailed instructions." (*Id.* at 12.) *See* Call-Out

20

Operator, Dictionary of Occupational Titles, Code 237.367-014, 1991 WL 672186 (4th ed. 1991) (stating that the reasoning level for the position requires an individual to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form" and to "[d]eal with problems involving several concrete variables in or from standardized situations"). Wandaliz A. maintains that there is a conflict requiring remand because the ALJ's RFC determination and his hypothetical to the VE limited her to only simple, repetitive, and routine tasks. (*Id.* (citing Tr. 48, 2417).) The Commissioner responds that this argument provides no basis for remand because Wandaliz A. forfeited it and, in the alternative, because no such conflict exists. (*See* ECF 11 at 8-10.)

To begin, the Commissioner asserts that Wandaliz A. forfeited this argument by failing to object to the VE's testimony at the administrative hearing. (*See* ECF 11 at 8 (citing *Vito R. v. Bisignano*, No. 24-6287, 2025 U.S. Dist. LEXIS 95487 (E.D. Pa. May 19, 2025) (finding the plaintiff forfeited his challenge to an alleged conflict in the VE's testimony where he failed to raise the issue at the hearing); *Christopher F. v. Kijakazi*, No. 21-516, 2022 U.S. Dist. LEXIS 188488 (D.N.J. Oct. 14, 2022) (holding the plaintiff's challenge came "too late" where his "counsel never objected or challenged the [VE's] testimony . . . at the administrative hearing"); *Brown v. Comm'r of Soc. Sec.*, No. 19-2110, 2020 U.S. Dist. LEXIS 44807 (E.D. Pa. Mar. 16, 2020) (holding the ALJ did not err in relying on the VE's testimony where the plaintiff's counsel never objected to or challenged it at the administrative hearing); *O'Neill v. Comm'r of Soc. Sec.*, No. 18-698, 2019 U.S. Dist. LEXIS 16069 (D.N.J. Jan. 31, 2019) (affirming an ALJ's decision where the claimant failed to raise an alleged conflict between the VE's testimony and the DOT during the hearing).)

21

Wandaliz A. responds that the Commissioner's forfeiture argument is meritless because "there is no administrative forfeiture rule." (ECF 12 at 3-6 (capitalization omitted).) She contends that there is no statutory or regulatory provision creating such a rule and that the Court cannot judicially manufacture one. (ECF 12 at 5.) *See Sims v. Apfel*, 530 U.S. 103, 108 (2000) ("SSA's regulations do not require issue exhaustion."), 110 ("Where . . . an administrative proceeding is not adversarial, . . . the reasons for a court to require issue exhaustion are much weaker."); *Cirko on behalf of Cirko v. Comm'r of Soc. Sec.*, 948 F.3d 148, 157 (3d Cir. 2020) (holding that the non-adversarial nature of Social Security proceedings means that issue exhaustion is not required). Wandaliz A. also argues that there are "scores of cases" where courts have reached the merits of the argument she seeks to raise here "despite the issue never having been raised during the administrative process." (ECF 12 at 3.) *See Coppertino v. O'Malley*, 23-2444, 2024 WL 921411 (E.D. Pa. Mar. 4, 2024). The Court need not decide whether Wandaliz A. forfeited her argument that the VE's testimony conflicts with the DOT because, whether she did or did not, her argument does not require remand.

In the Third Circuit, "there is no bright-line rule stating whether there is a *per se* conflict between a job that requires level three reasoning and a finding that a claimant should be limited to simple and routine work." *Zirnsak*, 777 F.3d at 618.[11] In *Zirnsak*, "the

---

[11] In her initial Brief, to support her argument that a limitation to simple work conflicts with jobs requiring reasoning level 3 such that she "could not perform the reasoning level 3 occupation of credit checker," Wandaliz A. cites only to out-of-circuit precedent: *Viverette v. Comm'r of Soc. Sec.*, 13 F.4th 1309, 1317-19 (11th Cir. 2021); *Paulek v. Colvin*, 662 F. App'x 588, 594 (10th Cir. 2016); *Joyce v. Comm'r of Soc. Sec.*, 662 F. App'x 430, 436 (6th Cir. 2016); *Zavalin v. Colvin*, 778 F.3d 842, 847 (9th Cir. 2015); *Hackett v. Barnhart*,

ALJ met his affirmative obligation to inquire about inconsistencies" by asking the VE if her testimony was consistent with the DOT, to which the VE replied that it was (except that the DOT did not address a sit/stand option for the relevant job). 777 F.3d at 617. The VE's testimony did not address the reasoning level inconsistencies that the plaintiff later sought to raise on appeal and neither the plaintiff nor her attorney had challenged the VE on the reasoning level issue "or otherwise identified any apparent inconsistency between the VE's testimony and the DOT" during the administrative proceedings. *Id.* (citation omitted). As a result, the ALJ did not elicit an explanation from the VE for any reasoning level inconsistency and did not "explain in its decision how the conflict was resolved." *Id.* So, it was up to the Court to determine whether there was substantial evidence in the record to support the ALJ's determination. *Id.* Ultimately, the Court found that "any conflict was not so obvious that the ALJ should have pursued the question" and the existence of any "minor conflicts" did not require remand. *Id.* at 619-20.

Although Wandaliz A. argues that *Zirnsak* does not preclude her reasoning level argument (ECF 12 at 7), the circumstances here parallel those in *Zirnsak* and warrant the same outcome. During the November 2021 hearing, the ALJ satisfied his affirmative obligation to identify any inconsistencies by asking the VE if her testimony was consistent with the DOT, and the VE responded affirmatively. (Tr. 51.) The VE did not specifically identify any inconsistency between the reasoning level for the credit checker job and the

---

395 F.3d 1168, 1176 (10th Cir. 2005). (ECF 10 at 12-13.)  "Of course, the decisions of other circuits, while persuasive, are not binding on the district courts in this Circuit." *United States v. Maury*, 695 F.3d 227, 259 n.2 (3d Cir. 2012).

hypothetical individual who the ALJ described. (*Id.*) Offered an opportunity to question the VE, Wandaliz A.'s attorney asked nothing about reasoning levels and offered nothing else to challenge the VE's testimony on this issue. (Tr. 51-55.)  Rather, Wandaliz A. raises the issue for the first time here in her Brief and Reply. (*See* ECF 10 at 9-14; ECF 12 at 3-9.)

Wandaliz A.'s case is distinguishable from cases where courts have found a conflict requiring remand when a plaintiff's attorney either drew attention to a reasoning level conflict at the administrative hearing or challenged the VE's testimony on this issue. *See, e.g., Cole T. v. Bisignano*, No. 24-6875, 2026 U.S. Dist. LEXIS 27897, at *9-14 (E.D. Pa. Feb. 11, 2026) (remanding where "it was [the p]laintiff's counsel who identified the problem at the administrative hearing"); *Gary T. v. Bisignano*, No. 25-1294, 2025 U.S. Dist. LEXIS 192477, at *51-53 (E.D. Pa. Sep. 30, 2025) (finding remand was appropriate where the "[p]laintiff brought attention to the inconsistency between the VE's testimony and the DOT on cross-examination"); *Alvarado v. Colvin*, 147 F. Supp. 3d 297, 306-07 (E.D. Pa. 2015) (remanding where the "plaintiff's counsel clearly challenged the vocational expert on her testimony"); *Handwerk v. Kijakazi*, 692 F. Supp. 3d 458, 466-70 (M.D. Pa. 2023) (remanding to resolve a conflict where the plaintiff's "counsel clearly challenged the VE on her testimony").

The absence of a *per se* conflict between Wandaliz A.'s limitation to "simple, repetitive, and routine tasks" and a job that requires level 3 reasoning and her attorney's failure to raise any conflict at the administrative hearing rendered any conflict not "so obvious that the ALJ should have pursued the question." *Zirnsak*, 777 F.3d at 619. Moreover, Wandaliz A. points to no evidence which would undermine the ALJ's

conclusion that she was capable of performing the tasks required for the credit checker job. She does not argue that there is not substantial evidence to support the ALJ's finding that she had "no limitation" in understanding, remembering, or applying information. (Tr. 2416.) More specifically, the ALJ pointed to Wandaliz A.'s statement that she was "able to count change and handle a savings account" and to record evidence that her thought processes were "not impaired" and "goal directed," she had fair to good insight and judgment, and good cognition and memory. (*Id.*)

Finally, even if the ALJ did err by failing to resolve a conflict between the credit checker job and Wandaliz A.'s reasoning level, here too she fails to show that any such error would make a difference to the outcome of this case that requires remand. *See Rutherford*, 399 F.3d at 553. As explained above, the Commissioner meets his step five burden if there are a significant number of jobs "in *one* or more occupations" that an individual can perform. 20 C.F.R. §§ 404.1566(b), 416.966(b) (emphasis added). The VE's testimony that there are 19,250 dowel inspector jobs available in the national economy still suffices to support the ALJ's step five finding even if the credit checker position is not available to Wandaliz A. based on a reasoning level conflict.

Remand is not required for further consideration based on this argument.

**B.**    **The ALJ Properly Considered Wandaliz A.'s Need for the Use of a Cane.**

Wandaliz A. also contends that the ALJ erred in concluding that her use of a cane was not supported by the record. (ECF 10 at 20.) She asserts that he "mischaracterized and overlooked overwhelming evidence demonstrating [her] ongoing need to use a cane for both balance and ambulation." (*Id.*) The Commissioner responds that the ALJ

25

properly considered the evidence and that Wandaliz A. is asking the Court to "reweigh the evidence that the ALJ has already considered." (ECF 11 at 11.) Because substantial evidence supports the ALJ's finding that Wandaliz A.'s need for the use of a cane was not supported by the record, there is no need for remand on this basis. *See Zirnsak*, 777 F.3d at 614.

For an ALJ to determine whether an assistive device like a walker is "medically required," SSR 96-9p provides that "there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing and describing the circumstances (*i.e.*, whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information)." SSR 96-9P, 1996 SSR LEXIS 6, *19 (July 2, 1996). An ALJ's RFC determination is not required to account for the use of a walker absent substantial evidence that the device was medically necessary. *Howze v. Barnhart*, 53 Fed. App'x 218, 222 (3d Cir. Nov. 25, 2022) (holding that a prescription and a checked box that an assistive device was required for ambulation, without more, were "insufficient to support a finding that [the claimant's] cane was medically necessary"). Here, like in *Howze*, "there are multiple references to the fact that [Wandaliz A.] uses a cane but no discussion of its medical necessity." *Id.* She points to no prescription for one and, in fact, a review of the over three-thousand-page record uncovers no medical prescription for Wandaliz A.'s cane.

While Wandaliz A. self-reported her use of the cane in a function report, (Tr. 344.), and several medical providers observed that she used one following the February 2020 motor vehicle accident, (*see* Tr. 1199, 1207, 1219, 1226, 1232, 1239, 1247, 1252, 1265, 1271,

1281, 1288, 1297, 1302, 1308, 1312, 1316, 1319, 1324, 1327, 1333, 1336, 1351, 1353, 1358, 1361, 1367, 1371, 1376, 1378, 1383, 1386, 1392, 1394, 1400, 1403, 1409, 1413, 1432, 1434, 1440, 1442, 1449, 1454, 1481, 1486, 1494, 1499, 1511, 1516, 1522, 1532, 1538, 1576, 1582, 1596, 1600, 1607, 1610, 1616, 1619, 1625, 1628, 1634, 1637, 1664, 1671, 1677, 1680, 1689, 1695, 1701, 1704, 1756, 1758, 1761, 1763, 1768, 1777, 1780, 1833, 1835, 1870, 1898, 1913, 1915, 1940, 1944, 1958, 1971, 1974, 1994, 1997, 2006, 2011, 2018, 2023, 2032, 2038, 2044, 2047, 2055, 2061, 2068, 2073, 2081, 2087, 2096, 2103, 2326, 2655, 2659, 2708, 2714, 2753, 2758, 2765, 2777, 2782, 2815, 2841, 2847, 3065, 3118-19, 3135, 3170, 3172, 3222, 3224, 3229, 3231, 3377, 3381), none except Dr. Kneifati opined that a cane was medically necessary. Further, Dr. Kneifati's opinion that "the use of a cane" was "medically necessary" was only a checkmark next to a box marked "yes" on a physical evaluation form. (Tr. 1944.)

Wandaliz A. argues that the ALJ mischaracterized Dr. Kneifati's opinion as well as the opinions of Dr. Cooke, Dr. Sandusky, and Dr. Payne and physical therapists Amy Martin and Jodi Drummond concerning their assessments of her need for a cane. (ECF 10 at 21-23.) The ALJ listed specific dates and referenced specific documents regarding each of their opinions about Wandaliz A.'s cane usage or lack thereof to support his determination. (Tr. 2419.) He did not need "to make reference to every relevant treatment note . . . where [Wandaliz A.] . . . ha[d] voluminous medical records" to permit his characterization of their opinions to withstand review. *Fargnoli*, 247 F.3d at 41-42. These documents, in addition to Wandaliz A.'s MRI imaging revealing mild osteoarthritis in her right knee (Tr. 3175) and her testimony saying that she did not use a walker or wheelchair, (Tr. 2440) substantially support the ALJ's finding.

27

Wandaliz A. argues that she "is not asking the Court to reweigh the evidence concerning [her] cane usage" but "merely ask[s] the Court to require the ALJ to base his findings on an accurate depiction of the evidence." (ECF 12 at 9.) Nevertheless, nowhere in her Brief or Reply does she point to any record evidence (aside from Dr. Kneifati's opinion) that her use of a cane is *medically necessary* consistent with SSR 96-9p. Given the absence of any other medical documentation showing that Wandaliz A.'s cane usage was medically required, the ALJ's determination that Wandaliz A.'s "need for the use of a cane is not supported by the medical evidence of the record" accords with SSR 96-9p. (Tr. 2419.)

Remand is not required based on this argument because the ALJ's analysis of whether Wandaliz A. needed to use a cane—or not—is supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce*, 487 U.S. at 565.

## IV.    CONCLUSION

Upon review of the record, substantial evidence—"such relevant evidence as a reasonable mind might accept as adequate"—exists to support the ALJ's RFC determination and conclusion that Wandaliz A. was not disabled. *Biestek*, 587 U.S. at 103. Substantial evidence is a "low threshold." *Zaborowski*, 115 F. 4th at 640. Because Wandaliz A. has not shown that any of her complaints would have changed the outcome of his case under the governing regulations, remand for further consideration is not required. *Rutherford*, 399 F.3d at 553. Her request for reversal or remand is **DENIED**. The Commissioner's final decision is **AFFIRMED**, and this matter is **DISMISSED**.

An appropriate Order follows.